UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Sharon Sanders,

               Plaintiff

v.

City of North Las Vegas, et al.,

               Defendants

Case No. 2:24-cv-00845-CDS-NJK

**Order Granting Defendants'
Motion for Summary Judgment**

[ECF No. 36]

Plaintiff Sharon Sanders brings this action against the City of North Las Vegas, Officer Anthony Malear and several Doe Defendants on behalf of Chris Smith Jr., who was fatally shot by Officer Malear in 2022. Second am. compl., ECF No. 24. The plaintiff asserts five claims for relief: (1) an excessive force claim against Officer Malear; (2) a denial of medical care claim against Officer Malear; (3) a substantive due process claim against Officer Malear; (4) a battery claim against the City and Officer Malear; and (5) a negligence claim against all defendants. *Id.* Pending before the court is the defendants' motion for summary judgment. Mot., ECF No. 36. The motion is fully briefed. Resp., ECF No. 37; Reply, ECF No. 40. For the reasons stated herein, I grant the defendants' motion for summary judgment with respect to the § 1983 claims, and I dismiss without prejudice the state law claims.

I.    **Background**

    A.  **The evidence**

This case concerns a shooting that occurred on October 10, 2022, at a park near the Martin Luther King (MLK) Memorial and statute located in North Las Vegas. ECF No. 36 at 5; ECF No. 27 at 4–5. The evidence shows that three different 911 calls were made regarding the decedent. First Call, Defs.' Ex. B, ECF No. 36-2; Second Call, Defs.' Ex. G, ECF No. 36-7; Third Call, Defs.' Ex. I, ECF No. 36-9. The first call reported that a male wearing a Halloween mask

had pulled a gun on the caller. Incident Details Report, Pl.'s Ex. A, ECF No. 37-1 at 2. Officer Malear went to the location of the call but was unable to locate the caller or suspect, so he left the area. *Id.*; ECF No. 36 at 5; ECF No. 37 at 4. He received the second and third calls a few minutes later, describing the decedent as being armed, wearing a Michael Myers Halloween mask, and threatening bystanders. *See* ECF No. 36-7 (expressing fear of getting shot and explaining that a man wearing a Halloween mask was threatening and pointing his gun at the caller and others); ECF No. 36-9 (detailing how the decedent was acting like "a wacko," wearing a "Freddy [Michael] Myers" Halloween mask, and pulling his gun on Mini Mart customers); *see also* Incident Details Report, Pl.'s Ex. B, ECF No. 37-2 at 4.

Bodycam footage shows that when Officer Malear arrived at the park, the decedent was approaching a group of bystanders while carrying a gun and wearing a Michael Myers Halloween mask. Body worn camera, Pl.'s Ex. 11 at 00:35–00:53. The decedent continued to approach the bystanders while Officer Malear shouted, "Hey! Police! Stop right there! Hey, stop! Stop right there! It's police! Put your hands up! Put your hands up! Dude, I'm not playin' with you!" *Id.* at 00:45–00:54. Then, the decedent began moving his arms toward his gun and running toward the bystanders while Malear shouted, "Stop reaching! Don't reach!" *Id.* at 00:53–55. Officer Malear then rapidly fired eight shots at the decedent. *Id.* at 00:55. While the shots were being fired, a gun is seen in the air. *Id.* at 00:55–00:56. Once the shooting concluded, Officer Malear shouted, "Don't reach! Do not reach!" *Id.* at 00:55–01:00.

Officer Malear kept his gun pointed toward the decedent while radioing in, "10-18. Shots fired. Shots fired. We're going to be at the MLK statute." *Id.* at 01:00–01:11. When other officers arrived on the scene, they instructed the bystanders to stand back. *Id.* at 01:14–01:25. Officer Malear proceeded to tell an officer, "We need . . . additional units, supervisor, and we need medical 10-18." *Id.* at 01:25–01:30. Within minutes, an officer brought Malear a trauma kit and the pair began examining the decedent. *Id.* at 01:20–3:20. They applied a tourniquet to the decedent's arm, rolled him onto his back, applied gauze to the wounds, and performed CPR. 03:20–8:00. All

2

the while, Officer Malear repeatedly said to the decedent, "Stay with us! Stay with me! Stay awake! Keep breathing!" *Id.* at 01:20–7:40.

### B. The dispute

The parties do not dispute that Officer Malear identified himself as police and commanded the decedent to stop. ECF No. 37 at 4–5. Nor do they dispute that, despite Officer Malear's demands, the decedent proceeded to walk away from Officer Malear and reach for his gun. ECF No. 37 at 4–5. Rather, they dispute the timing of when the decedent discarded his gun. The defendants argue that Officer Malear fired the first shot before the discard. ECF No. 37 at 5. In Officer Malear's deposition, he states that the decedent's discard of the firearm did not appear to be intentional. Malear dep., Pl.'s Ex. G, ECF No. 37-3 at 4–5, 10–11, 26–28, 47. The plaintiff argues that Officer Malear fired the first shot during or after the discard, and that the decedent neither pointed the gun at anyone nor attempted to retrieve the gun after he discarded it. ECF No. 37 at 5–6.

These facts, the plaintiff contends, show that Officer Malear used excessive force in violation of the decedent's Fourth Amendment rights. *Id.* at 6. According to the plaintiff, there "were less lethal alternatives available to Officer Malear, including giving a verbal warning that deadly force would be used, taking a position of cover, issuing additional commands and additional time to comply with those commands." *Id.* at 6. The plaintiff further contends that "a reasonably jury could find that Officer Malear saw Decedent toss the gun and that Decedent intentionally tossed the gun." *Id.* at 8.

## II.    Legal standard

Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). At the summary-judgment stage, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100,

1103 (9th Cir. 1986). If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed; the case must then proceed to the trier of fact. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

Once the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323. "To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial." *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018).

**III.    Discussion**

**A.  The defendants are entitled to summary judgment on the § 1983 claims.**

The defendants move for summary judgment on the plaintiff's § 1983 claims. Section 1983 imposes civil liability on any person who deprives another of his or her constitutional rights while acting under the color of state law. *See* 42 U.S.C. § 1983. A person deprives another "of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

*1.  Officer Malear is entitled to summary judgment on the excessive force claim because he did not violate a clearly established constitutional right.*

The defendants argue they are entitled to judgment on the plaintiff's excessive force claim because Officer Malear's force was objectively reasonable, and qualified immunity applies. I agree.

4

An excessive force claim is adjudicated under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). "Whether a use of force was objectively reasonable demands 'careful attention to the facts and circumstances' relating to the incident, as then known to the officer." *Barnes v. Felix*, 605 U.S. 73, 80 (2025) (citation omitted). Courts consider "the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 388. Further, the "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving— about the amount of force that is necessary in a particular situation." *Id.* at 396. And where "the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." *Id.* at 103.

Here, Officer Malear's use of force was objectively reasonable. First, the decedent was threatening to shoot people, carrying a gun, and wearing a Halloween mask. The nature of the crimes at issue were therefore violent and severe. Second, the decedent posed an immediate threat to the safety of the officers and the numerous bystanders because he was charging toward them while carrying a gun after making numerous threats of violence. Third, the decedent was actively resisting arrest. Officer Malear repeatedly identified himself as police, demanded that the decedent stop fleeing, and warned the decedent to not reach for his gun. The decedent ignored these commands and started running away from Officer Malear toward a group of bystanders. Therefore, in light of the totality of the circumstances, Officer Malear's split-second decision to use of deadly force was objectively reasonable.

Even if Officer Malear's use of force was excessive, he would still be entitled to summary judgment because qualified immunity shields him from liability. The doctrine of qualified immunity "shields officials from civil liability so long as their conduct 'does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quotation omitted). An officer "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765 (2014). Stated otherwise, "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Mullenix*, 577 U.S. at 12). And it "protects actions in the 'hazy border between excessive and acceptable force.'" *Id.* at 18 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004) (per curiam)).

For example, in *Kisela v. Hughes*, the Supreme Court held that an officer who shot and killed a woman who was acting erratically with a knife was entitled to qualified immunity. 584 U.S. 100 (2018). There, the woman's erratic behavior prompted a bystander to call 911. *Id.* at 105. Upon arriving at the scene, an officer commanded the woman to drop the knife twice. *Id.* She refused, so the officer shot her. *Id.* The officer said that "he shot [the woman] because, although the officers themselves were in no apparent danger, he believed she was a threat to [a bystander]." *Id.* The officer was concerned because "[h]e was confronted with a woman who had just been seen hacking a tree with a large kitchen knife and whose behavior was erratic enough to cause a concerned bystander to call 911." *Id.* The whole situation "unfolded in less than a minute." *Id.* at 107. In turn, the Court found that qualified immunity applied to the officer's split-second judgment to use deadly force because the circumstances were "far from an obvious case in which any competent officer would have known that shooting [the woman] to protect [the bystander] would have violated the Fourth Amendment." *Id.* at 105–06.

The same is true here. Like the woman in *Kisela* whose erratic behavior prompted a 911 call, the decedent's behavior here—that is, threatening bystanders while wearing a Michael Myers mask and carrying a gun—was so erratic that it prompted three 911 calls. These calls were relayed to Officer Malear, so he was aware of the decedent's erratic behavior before he encountered him at the park. Further, like the officer in *Kisela*, Malear had to make a split-

second decision. And the circumstances surrounding that decision were even more egregious than those in *Kiselar*: The decedent here was carrying a gun rather than a knife, and there were numerous bystanders rather than one. Compared to the facts of *Kisela*, the facts here are even further from an obvious case in which any competent officer would have known that shooting the decedent to protect the bystanders would violate the Fourth Amendment. As such, qualified immunity shields Officer Malear from liability.

>            2. *Officer Malear is entitled to summary judgment on the denial of medical care claim because no constitutional violation occurred.*

The Supreme Court has held that the Fourth Amendment's Due Process Clause requires "the responsible government or governmental agency to provide medical care to persons . . . who have been injured while being apprehended by the police." *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) (finding that the City fulfilled its constitutional obligation by seeking that the injured party was "was taken promptly to a hospital that provided the treatment necessary for his injury"). The Ninth Circuit maintains that "a police officer who promptly summons the necessary medical assistance has acted reasonably for purposes of the Fourth Amendment, even if the officer did not administer CPR." *Tatum v. City & Cnty. of S.F.*, 441 F.3d 1090, 1099 (9th Cir. 2006).

Here, Officer Malear is entitled to summary judgment on the denial of medical care claim because he did in fact promptly summon medical assistance. Seconds after shooting the decedent, Officer Malear radioed for medical attention. Within minutes, an officer brought Malear a trauma kit and the pair began medically examining the decedent. They applied a tourniquet to the decedent's arm, rolled him onto his back, applied gauze to the wounds, and performed CPR. All the while, Officer Malear repeatedly said to the decedent, "Stay with us! Stay with me! Stay awake! Keep breathing!" Considering the nature of the wounds and the prompt manner in which medical care was summoned, I find that Officer Malear acted reasonably as a matter of law for purposes of the Fourth Amendment. And assuming arguendo

7

he did not act reasonably, qualified immunity shields him from liability because he did not violate a clearly established constitutional right. *See, e.g.*, *Tatum*, 441 F.3d at 1099. As such, he is entitled to summary judgment on this claim.

### 3. Officer Malear is entitled to summary judgment on the substantive due process claim because no constitutional violation occurred.

The plaintiff argues that Officer Malear's conduct during the incident violated her Fourteenth Amendment substantive due process right "to be free from unlawful state interference with [her] family relations." ECF No. 24 at 9–10. To establish a substantive due process violation, "a plaintiff is ordinarily required to prove that a challenged government action was clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare." *Patel v. Penman*, 103 F.3d 868, 874 (9th Cir. 1996).

"However, where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing a plaintiff's claims." *Id.* The Supreme Court has held that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham*, 490 U.S. at 395.

Here, the plaintiff recasts the Fourth Amendment excessive force claim brought on behalf of the decedent as a substantive due process claim brought on behalf of herself. But regardless of which due process framework is applied, the outcome is the same: Officer Malear is entitled the summary judgment because his conduct was reasonable for the reasons set forth above. And, relevant to the substantive due process framework, it bore a substantial relation to public health, safety, morals, and general welfare. Numerous 911 calls were made by bystanders and victims of the decedent's erratic and threatening behavior. The threat the decedent posed to

the public's safety was overwhelming, especially when he ignored Officer Malear's commands and charged toward a group of bystanders while carrying a gun. In light of the decedent's erratic behavior, blatant disregard for public safety, and persistent disobedience of Officer Malear's instructions, it was objectively reasonable for Malear to use deadly force in this situation.

**B.   The court dismisses the plaintiff's state law claims for lack of jurisdiction.**

Finally, having granted the defendants' motion for summary judgment with respect to the plaintiff's § 1983 claims, the court lacks original jurisdiction over the remaining state law claims for battery and negligence. Under 28 U.S.C. § 1367(c), a district "may decline to exercise supplemental jurisdiction" *inter alia* where "the district court has dismissed all claims over which it has original jurisdiction." Typically, "when federal claims are dismissed before trial . . . pendent state claims should also be dismissed." *Religious Tech. Ctr v. Wollersheim*, 971 F.2d 364, 367–68 (9th Cir. 1992). Indeed, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (citation omitted).

Accordingly, in its discretion, the court declines to exercise supplemental jurisdiction over the remaining state law claims. *See City of Colton v. Am. Promo. Events, Inc.-W.*, 614 F.3d 998, 1008 (9th Cir. 2010) (holding that district court acted within its discretion in declining to exercise supplemental jurisdiction after granting summary judgment on all federal claims). As a result, claims four and five are dismissed without prejudice.

**IV.    Conclusion**

IT IS HEREBY ORDERED that the defendants' motion for summary judgment [ECF No. 136] is granted with respect to claims one, two, and three.

9

IT IS FURTHER ORDERED that claims four and five are dismissed without prejudice.

The Clerk of Court is kindly directed to enter judgment in favor of the defendants on the first three claims, to dismiss claims four and five without prejudice, and to close this case.

Dated: March 24, 2026

_____
Cristina D. Silva
United States District Judge